## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PATRICIA A. BROOKS                )
4348 Decatur Drive                )
Woodbridge, VA 22193,             )
                                  )
        Plaintiff,                )
                                  )
    v.                            )        Civil Action No. _____
                                  )
NEIL A.G. MCPHIE                  )
Chairman                          )
Merit Systems Protection Board    )
1615 M Street, N.W.               )
Washington, DC 20419,             )
                                  )
        Defendant.                )
_____)

## **<u>COMPLAINT</u>**

1.  Plaintiff Patricia A. Brooks, by and through undersigned counsel, hereby files this action against Defendant Neil A.G. McPhie, in his official capacity only, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e <u>et</u> <u>seq</u>., and seeks relief pursuant to Title VII and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, for harms caused to Plaintiff by Defendant's unlawful race discrimination, gender discrimination, and retaliation. Plaintiff requests as relief: an immediate end to a hostile work environment, including injunctive and declaratory relief; appropriate record correction; compensatory damages; reasonable attorney

fees, costs, and expenses; and such other relief as the Court deems just and appropriate, in order to fully remedy Defendant's unlawful acts.

## PARTIES

2. Plaintiff Patricia A. Brooks, a United States citizen, is a federal employee with 27 years of total work experience, of which the last 13 years have been in federal government service. Ms. Brooks has dedicated her last nine years to the United States Merit Systems Protection Board ("MSPB") as an Information Management Technologist. Plaintiff resides at 4348 Decatur Drive, Woodbridge, VA 22193. Ms. Brooks is an African American woman.

3. Defendant Neil A.G. McPhie is Chairman of the Merit systems Protection Board, and as such, has ultimate authority over the actions of the MSPB. Defendant is sued in his official capacity only. Defendant's address is 1615 M Street, N.W., Washington, DC 20419.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this Complaint because it presents a question of federal law. 28 U.S.C. § 1331.

5. Specifically, this Court has jurisdiction over this

Complaint pursuant to 42 U.S.C. §§ 2000e-5(f)(3).

6. This Court is the proper venue pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3). All of the discriminatory acts took place in the District of Columbia.

7. The facts underlying this Complaint were developed, in part, through an administrative Equal Employment Opportunity ("EEO") complaint, which Plaintiff timely initiated and has fully exhausted.

8. Plaintiff timely initiated EEO counseling by contacting Defendant's EEO Office on August 30, 2006 and October 30, 2006. Ms. Brooks timely filed a formal EEO complaint on February 20, 2007. After receipt of the Report of Investigation ("ROI"), Plaintiff timely requested a hearing at the Equal Employment Opportunity Commission ("EEOC") on July 10, 2007, in accordance with EEOC procedure. Plaintiff withdrew from the EEOC on August 10, 2007, and Defendant issued a Final Agency Decision on October 19, 2007, which was received by Plaintiff's attorneys on October 22, 2007. Accordingly, Plaintiff timely files this Complaint within 90 days of receipt of the Final Agency Decision and more than 180 days after the filing of Plaintiff's formal EEO complaint. See 42 U.S.C. § 2000e-16(c).

## FACTS

9.   Plaintiff Patricia A. Brooks, an African American woman, is a highly qualified and productive federal employee. She has been employed as an Information Management Technologist, GS-14, with the MSPB's Office of Information Resources Management ("IRM") for over nine years.

10. Ms. Brooks' direct supervisor is Nick Ngo (Asian male), Deputy Director of IRM.  Ms. Brooks' second-level supervisor is Tommy Hwang (Asian male), Director of IRM.  Mr. Hwang became Ms. Brooks' second-level supervisor in January 2005.

11. Ms. Brooks is one of the five GS-14 IRM Team Leaders, all of whom are supervised by Mr. Ngo and Mr. Hwang as first and second level supervisors, respectively.  Ms. Brooks' fellow Team Leaders at the GS-14 level are Bill McDermott (white male), Craig Thomas (white male), Elliott Hoang (Asian male), and Katherine Turner (white female).

12. Throughout her career at IRM, Ms. Brooks has been responsible for successfully completing many high profile projects, such as the development of an automated system for tracking the MSPB's Freedom of Information Act ("FOIA") requests, per Executive Order 13392.  Further, Ms. Brooks has

provided substantial support for the MSPB Document Management System, including importing network-based MSPB and court decisions into this System and developing a user survey for the System using Sharepoint Services.

13. Ms. Brooks was discriminated against on the basis of her race, gender, and in retaliation for her EEO activity as set forth below in paragraphs 14-64.

14. In January 2005, when Mr. Hwang became the Director of IRM, Mr. Hwang and Mr. Ngo, Ms. Brooks' Asian male supervisors, began treating her differently than other MSPB employees who were not African American women. The first incident was when Mr. Ngo told Ms. Brooks that people were asking why she was on a GS-14 pay scale.

15. In March 2005, Ms. Brooks and both of her supervisors had a meeting to discuss her analysis of web enabling of existing Lotus Notes applications. Mr. Hwang acknowledged the depth of Ms. Brooks' research and how it laid the foundation for migrating the applications to a new tool; however, both men derided her efforts by stating that her work was too involved and too detailed, without providing any constructive feedback.

16. In April 2005, Ms. Brooks' supervisors attempted to

create the illusion of a performance problem when Mr. Hwang criticized her efforts on a test project, in a meeting to discuss her efforts on a document migration. Both of Ms. Brooks' supervisors withheld key details of the project until after the end date, and they established objectives after this date that were impossible to achieve given the short timeframe for her project.

17. On May 11, 2005, Ms. Brooks led a demonstration, attended by nearly all of the IRM staff, which was a practice presentation about migrating documents to the Document Management System. During the presentation, Mr. Hwang yelled at Ms. Brooks in front of her co-workers, making insulting and demeaning remarks. Following his verbal abuse, Mr. Hwang angrily threw a notebook of documents on the table towards Ms. Brooks.

18. Ms. Brooks immediately left the room and reported Mr. Hwang's actions to MSPB Chairman Neil A.G. McPhie. Mr. McPhie set up a meeting for the next day between his Chief of Staff, Tracey Watkins, and Ms. Brooks.

19. On May 12, 2005, Ms. Brooks met with Tracey Watkins about Mr. Hwang's behavior at the practice presentation. Ms. Watkins called Mr. Hwang during this meeting and recommended

that a mediation be held.

20.  Ms. Hwang participated in mediation with Ms. Brooks and mediator Lynn Sylvestor on June 30, 2005.  The mediation did not achieve a resolution or prevent subsequent retaliation by Mr. Hwang and his deputy, Mr. Ngo.  In fact, the hostile, disparate treatment of Ms. Brooks by her supervisors escalated after the mediation.

21.  Following the meeting with Tracey Watkins, Mr. Hwang and Mr. Ngo began bombarding Ms. Brooks with a series of emails demanding her attention.  The emails were harassing in nature and asked her for extensive explanations of things that they had previously discussed.  Further, some of the emails incorrectly identified Ms. Brooks' completed tasks as incomplete.

22.  On October 26, 2005, Mr. Hwang, Mr. Ngo, and Ms. Brooks had a meeting to discuss her performance appraisal. Mr. Hwang and Mr. Ngo proposed rearranging the IRM Team Leaders' meetings, which Ms. Brooks typically attended as a Team Leader, so that fewer people would attend.  Their proposed structure would have limited these meetings to an all-male meeting consisting of three Asian males (IRM supervisors Tommy Hwang and Nick Ngo and Team Leader Elliott

7

Hoang) and two white males (Team Leaders Bill McDermott and Craig Thomas). Team Leaders Ms. Brooks (African American female), Katherine Turner (white female), and Teresa Jefferson (African American female) would have been excluded from the Team Leaders' meetings, which they were previously attending. Mr. Hwang and Mr. Ngo said that the men were better suited for management.

23. In the October 26, 2005 meeting, Ms. Brooks learned that Mr. Hwang and Mr. Ngo were placing comments in her personnel file which claimed that she was late on an assignment and had deficient management abilities. To Plaintiff's knowledge and belief, no such remarks had been made to any male employee, although these employees often failed to meet deadlines and provided minimal explanations for their delays. Ms. Brooks defended her efforts on the project, which involved the migration of Lotus Notes documents into the Document Management System, and her management abilities in general. Specifically, Ms. Brooks explained the reason why the migration project had not proceeded on schedule. Moreover, the Manager of the Document Management System, Bill McDermott (white male), had fallen behind in upgrading the System and deploying the upgraded client software. In

contrast with Ms. Brooks, Mr. McDermott did not have a comment placed into his personnel file.

24. In January 2006, Mr. Ngo required Ms. Brooks to provide extensive explanations of all of her activities on her weekly status reports, although these reports were supposed to be concise.

25. In April 2006, during a midyear review of Ms. Brooks' performance, Mr. Ngo complained about a delay on the Sharepoint calendar project even though Ms. Brooks had developed a calendar system and submitted it for review. Mr. Ngo suggested that Ms. Brooks had failed to meet the requirements for the project, but Ms. Brooks did complete the project to the extent permitted by the tools provided to her. In contrast, her supervisors did not question or blame another Team Leader, Craig Thomas (white male), concerning his role in the project, even though his actions affected the project's completion.

26. In April 2006, in a memo attached to Ms. Brooks' midyear performance review, Mr. Hwang and Mr. Ngo indicated that Ms. Brooks did not perform at an acceptable level. Ms. Brooks responded to the issues raised in this memo in April 2006. For example, regarding her supervisors' complaint that

she depended on others to complete tasks, Ms. Brooks stated that she depended on other teams and vendors in the same way that other IRM staff did, as it is impossible not to rely on other employees to complete projects because IRM staff have designated areas where they have particular knowledge and system access.

27.  In May 2006, Mr. Hwang and Mr. Ngo did not correct a white male IRM employee, Bill McDermott, who was antagonistic towards Ms. Brooks.  Mr. McDermott, a fellow Team Leader, became visibly angry with Ms. Brooks during a discussion of a Document Management System project attended by Mr. Hwang, Mr. Ngo, Mr. McDermott, and Ms. Brooks, where Ms. Brooks had been brought onto the project to assist Mr. McDermott.  Mr. McDermott demanded that Ms. Brooks provide extensive explanations about her work on the project and angrily questioned Ms. Brooks during the course of the meeting.  Mr. Hwang and Mr. Ngo did not ask Mr. McDermott to modify his behavior.

28.  In August 2006, Mr. Ngo described Ms. Brooks' development of the Freedom of Information Act (FOIA) tracking system as being late.  Mr. Ngo took the position that it would be unacceptable for this system to be completed beyond October

1, 2006, even though the actual deadline was not until December 15, 2006. Moreover, Ms. Brooks had given a detailed brief to Mr. Ngo explaining the problems she faced using the tools that Mr. Ngo had instructed her to use and why the FOIA project would take longer to complete.

29. In contrast with his treatment of Ms. Brooks, Mr. Ngo routinely gave extensions of time to other IRM employees in similar circumstances. Further, Mr. Hwang and Mr. Ngo publicly told IRM employees that project delays would not affect their evaluations if reasonable explanations were given, but they did not apply this standard to Ms. Brooks. Ms. Brooks' peers have been significantly late on many projects but have not been subjected to the uncompromising standard levied on Ms. Brooks.

30. On August 30, 2006, Ms. Brooks contacted the MSPB EEO Director, Julio Matta, concerning, inter alia, the issues she was having with her supervisors regarding the FOIA project. Mr. Matta contacted Mr. Hwang and Mr. Ngo about Ms. Brooks' complaint and was concerned that they could not respond to his questions concerning fair and equal treatment of Ms. Brooks and that they did not have any documentation to support their negative comments or conclusions about Ms.

Brooks' performance.

31.  After Ms. Brooks complained to the EEO Director about her two Asian male supervisors, they began scrutinizing her time and attendance and charged that she incorrectly reported her time and attendance on October 25, 2006.  On this date, Mr. Hwang or Mr. Ngo had a IRM employee, Tim McAleer (white male), check on her whereabouts, and then Mr. Ngo sent a series of emails to Ms. Brooks from October 27 to 31, 2006, which questioned her attendance.  To placate their concerns, Ms. Brooks gave up 45 minutes of leave time to cover the time in question, even though she thought she had worked the hours she had reported.  Ms. Brooks also noted that she had worked extra hours and on weekends, including Sunday, October 22, 2006, without seeking compensation for this work.  This level of surveillance and scrutiny of attendance has not been done with any male IRM employee.

32.  Mr. Hwang and Mr. Ngo did not scrutinize the time and attendance records of any Asian, white, or male employees in the same manner as they did with Ms. Brooks.[1]  For

---

[1]  Mr. Ngo's efforts to verify the accuracy of such a small increment of time (30-40 minutes), which included checking computer records, delaying the processing of the payroll for all MSPB employees, and having a meeting to question Ms. Brooks about her attendance was unprecedented at the MSPB.

instance, Ms. Brooks' co-worker, Tim McAleer (white male), has been frequently late without being questioned or harassed by Mr. Ngo.    There have been many complaints made by Mr. McAleer's co-workers about his tardiness, poor work habits, and poor work quality.    However, Mr. Hwang and Mr. Ngo have not subjected Mr. McAleer to the same level of scrutiny as Ms. Brooks.

33.  On October 30 and 31, 2006, Ms. Brooks again contacted the MSPB EEO Director, Julio Matta, regarding her time and attendance records for the pay period of October 16-27, 2006, as Mr. Ngo had been acting in a manner that was inconsistent with his treatment of other employees when issues of time and attendance arose.

34.  In a meeting on October 31, 2006, between Ms. Brooks, Mr. Matta, Mr. Hwang, and Mr. Ngo, Mr. Ngo admitted that he had an IRM employee check on Ms. Brooks' whereabouts and check the computer system to determine when she logged out of the email system.

35.  In November 2006, Mr. Ngo embarrassed Ms. Brooks in front of an MSPB client organization by sending an email, in which he copied the client and Mr. Hwang, with a large attachment showing an error that had occurred when the client

had tested the FOIA system that Ms. Brooks had developed. The minor error was easily corrected and had been caused by data that had become corrupted, not by the application developed by Ms. Brooks as implied by Mr. Ngo.

36. On November 3, 2006, Ms. Brooks' supervisors gave her an inaccurate, unfairly low performance rating of "minimally successful." This rating was discriminatory in that it minimized Plaintiff's efforts, even though a number of her projects provided critical support to other teams. The performance appraisal also made unsubstantiated claims that the IRM staff, mainly other Team Leaders, found Ms. Brooks difficult to work with. In addition, the appraisal made unsubstantiated claims that Ms. Brooks had submitted numerous late reports.

37. In the meeting about the performance appraisal, Mr. Ngo stated that he had reports from male employees about Ms. Brooks' alleged inability to work with others. Mr. Ngo had never discussed any such issues with Ms. Brooks at any other time including in her midyear review, and he could not produce any emails except one involving an issue in which Mr. Ngo actually sided with Ms. Brooks (see paragraph 40 infra). Mr. Ngo's unsubstantiated claims about Ms. Brooks' work

14

relationships were used as part of Ms. Brooks' performance evaluation, which was not done with any other IRM employee, to Plaintiff's knowledge and belief.

38. From October 1, 2005 to September 30, 2006, neither Mr. Hwang nor Mr. Ngo ever indicated that there were any significant problems with Ms. Brooks' performance.

39. Ms. Brooks' "minimally successful" performance rating was based solely upon some missing weekly reports, two Team Leaders meetings, and unsubstantiated allegations. Compared to her co-workers, Ms. Brooks deserved at least a fully successful rating in light of all of her accomplishments.

40. Mr. Ngo stated during the appraisal meeting that he had received emails stating that Ms. Brooks was difficult to work with. The only incident specifically mentioned was one involving Elliot Hoang, a fellow Team Leader and Manager of the Operations Team. Regarding the incident with Mr. Hoang, Ms. Brooks had asked Mr. Hoang for access to his Microsoft technical support. Mr. Hoang had then questioned Ms. Brooks at length about her efforts to resolve the problem and ultimately refused to give her access to the support line, which he controlled. After this disagreement, Mr. Ngo had

instructed Mr. Hoang to cooperate with Ms. Brooks.

41. Mr. Ngo did not mention any other incident besides this one during her performance review; he did not identify any other person that Ms. Brooks presumably had conflicts with; and he did not produce any documentation, emails, or other correspondence to support his statement that Ms. Brooks had contentious relationships with other Team Leaders.

42. Mr. Ngo's story about this incident with Mr. Hoang changed when he and Mr. Hwang issued Ms. Brooks a minimally successful annual performance rating. In the performance review, Mr. Ngo used the same email regarding her disagreement with Mr. Hoang (see paragraph 40 supra) to argue that Ms. Brooks was not being cooperative with other employees.

43. Mr. Hwang and Mr. Ngo have regularly held Ms. Brooks accountable for situations that have been beyond her control and resources, while male employees have not been held accountable for similar situations.

44. Mr. Ngo has discussed Ms. Brooks' grade and qualifications with her male co-workers.

45. Throughout the time that Ms. Brooks has worked under Mr. Hwang and Mr. Ngo but especially after she complained to the MSPB Chairman and the EEO Director about their

16

mistreatment of her, she has been treated by her Asian male supervisors in a dismissive and disparaging manner. Mr. Hwang and Mr. Ngo have treated Ms. Brooks differently from her Asian, white, and male co-workers.

46. Mr. Ngo has not cooperated with or provided encouragement to Ms. Brooks as he has with Asian, white, and male employees.

47. Mr. Hwang and Mr. Ngo have regularly required Ms. Brooks to provide extensive explanations regarding small project mistakes or delays while her Asian, white, and male colleagues were allowed to make major mistakes without giving any explanation. To Plaintiff's knowledge and belief, none of these colleagues has been penalized for their mistakes, even when the effect of their mistakes has been adverse to the Agency's mission.

48. Team Leader Elliot Hoang (Asian male) was responsible for erroneously resetting the system date for the Lotus Notes Server, and the effect was so adverse to the Agency that the Chairman's Chief of Staff, Tracey Watkins, personally met with Mr. Hwang and Mr. Ngo about this. There has been no apparent consequence for Mr. Hoang.

49. Team Leader Bill McDermott (white male) has

experienced a number of problems that prevented MSPB customers from filing complaints or from uploading their documents. There has been no apparent consequence for Mr. McDermott.

50. Team Leader Craig Thomas (white male) has had problems involving the delivery dates for the MSPB intranet and public site portals, having the date extended several times. Since it was placed into production, defects have continued to be identified. There has been no apparent consequence for Mr. Thomas.

51. Team Leader Katherine Turner (white female) manages the Case Management System ("CMS") that continues to exhibit many problems that adversely affect the MSPB employees in completing their caseload. There has been no apparent consequence for Ms. Turner.

52. In December 2006, Mr. Hoang and Mr. McAleer of the Operations team incorrectly reset the date for the Lotus Notes mail system, which adversely affected the entire MSPB organization and resulted in a warning by Chief of Staff Tracey Watkins. However, the responsible persons were never publicly rebuked as Ms. Brooks has been many times before.

53. In December 2006, Mr. Ngo took extraordinary steps to check to see if a service call that Ms. Brooks took to fix

a non-critical issue was entered as a "problem ticket" in their Technical Support System. Mr. Ngo demanded to know why the ticket was not in the system and attempted to foment the issue until he learned that a Technical Support Representative should have entered the ticket. Mr. Ngo made an issue of this and pursued it to harass Ms. Brooks.

54. In January 2007, Mr. Ngo approached Zak Mohamoud (African American male), a GS-13 employee who works under Mr. Hoang, and cautioned him about involving himself in Ms. Brooks' EEO complaint. They discussed that another African American man had done something similar before and was fired.

55. Mr. Hoang (Asian male) and Mr. McDermott (white male) have had acrimonious disputes in public, and they have occasionally exchanged insults. Neither of these two men have been formally reprimanded for their actions, nor have they received a negative performance appraisal due to their poor interpersonal relationships or communication, unlike Ms. Brooks. In contrast, both Mr. Hoang and Mr. McDermott have received at least one award and better performance ratings than Ms. Brooks since Mr. Hwang has become the Director of IRM.

56. Mr. Hoang has made his team seek approval from a

19

white or Asian man before they were allowed to interact with African American women.   For instance, Mr. Hoang instructed his staff to only work with Ms. Brooks to resolve technical issues after they contacted Craig Thomas (white male) for his approval of Ms. Brooks' involvement.   This was improper and insulting behavior, as Ms. Brooks and Mr. Thomas are co-Team Leaders with the same rank in the organization.

57.  Mr. Hwang and Mr. Ngo have taken many steps to subvert Ms. Brooks' authority and inhibit her job performance and career advancement. They have attacked her character and competence and have undermined her position in the office. Their harassment has affected Ms. Brooks' relationships with her co-workers and internal MSPB customers.

58.  Mr. Hwang has stated that Ms. Brooks' value to the team does not correspond to her GS-14, step 7 level.   Mr. Hwang has openly reprimanded Ms. Brooks at staff meetings.

59.  Mr. Hwang, Mr. Ngo, and Mr. McAleer have told other MSPB employees that Ms. Brooks is crazy.   Mr. Hwang and Mr. Ngo have also spoken negatively to internal MSPB customers by referring to Ms. Brooks as unprofessional.

60.  Mr. Hoang (Asian male) tried to convince Zak Mohamoud (African American male) that Ms. Brooks is paranoid.

Further, Mr. Hoang told a team member not to help Ms. Brooks.

61. Mr. Ngo told an IRM employee that the IRM supervisors wished to fire Ms. Brooks.

62. Ms. Brooks has become isolated from many of her co-workers because of the hostility in the work environment. Many of Ms. Brooks' co-workers now appear reluctant to work or interact with her because they are afraid that the IRM supervisors will perceive them as being supportive of Ms. Brooks.

63. Ms. Brooks received performance awards before Mr. Hwang became Director of IRM and her second-level supervisor in January 2005. She has not received any awards after Mr. Hwang became her second-level supervisor. Moreover, her "minimally successful" performance rating for 2006 prevented Ms. Brooks from receiving an award, which typically is in the form of a monetary bonus.

64. Ms. Brooks' 2006 performance rating, which followed her complaints to the MSPB Chairman and the EEO Director about mistreatment by her Asian male supervisors, was lower than all of her previous performance ratings at IRM. For fiscal year 2007, after Ms. Brooks had initiated her administrative discrimination complaint, she was given a rating of "fully

successful."

## CAUSES OF ACTION

### COUNT I

65. Based upon the facts described in the preceding paragraphs, Defendant unlawfully discriminated against Plaintiff Patricia A. Brooks on the basis of her race (African American) by subjecting Ms. Brooks to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. Defendant has not subjected non-African American employees to a hostile work environment; and Defendant's explanations for its hostile treatment of Plaintiff are pretextual.

### COUNT II

66. Based upon the facts described in the preceding paragraphs, Defendant unlawfully discriminated against Plaintiff Patricia A. Brooks on the basis of her sex (female) by subjecting Ms. Brooks to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. Defendant has not subjected male employees (at least not white and Asian males) to a hostile work environment; and Defendant's explanations for its hostile treatment of Plaintiff are pretextual.

## COUNT III

67.  Based upon the facts described in the preceding paragraphs, Defendant unlawfully retaliated against Plaintiff Patricia A. Brooks on the basis of her prior protected EEO activities by subjecting Ms. Brooks to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq.  Defendant has not subjected employees who have not made discrimination complaints to a hostile work environment; and Defendant's explanations for its hostile treatment of Plaintiff are pretextual.

## RELIEF REQUESTED

68.  Plaintiff requests the following relief:

   a.  An injunction ending the hostile work environment to which Plaintiff has been subjected by Tommy Hwang, Nick Ngo, and other co-workers with the encouragement of Mr. Hwang and Mr. Ngo;

   b.  An injunction ordering the expungement of all negative records and statements from Plaintiff's personnel records, including her performance appraisals;

c.  A declaratory judgment that the minimally successful performance rating which Defendant gave Plaintiff for 2006 is an act of unlawful discrimination and retaliation in violation of the Civil Rights Act;

d.  Appropriate record correction consistent with the facts of this case and the above-requested relief;

e.  Posting of notices at the MSPB's Washington, D.C. headquarters stating that discrimination has occurred and is unlawful;

f.  Maximum compensatory damages to which Plaintiff is entitled after proof at trial;

g.  Reasonable attorney fees at prevailing market (Laffey) rates and the costs and expenses of this action and Plaintiff's predecessor administrative complaint at the MSPB; and

h.  Such other relief as the Court deems just and appropriate.

## **<u>JURY TRIAL</u>**

69. Plaintiff requests a trial by jury on all issues that are triable by jury.

_____/s/_____

JOSEPH D. GEBHARDT
(D.C. Bar No. 113894)
DANIEL K. GEBHARDT
(D.C. Bar No. 975703)
GEBHARDT & ASSOCIATES, LLP
1101 17th Street, N.W.
Suite 807
Washington, DC 20036-4716
(202) 496-0400

January 17, 2008               Attorneys for Plaintiff


Law Student Assistant:
Lauren B. Miller

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF<br>**(EXCEPT IN U.S. PLAINTIFF CASES)** | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>**(IN U.S. PLAINTIFF CASES ONLY)**<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- 1  U.S. Government Plaintiff
- 2 U.S. Government Defendant
- 3  Federal Question (U.S. Government Not a Party)
- 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

### A. *Antitrust*

410 Antitrust

### B. *Personal Injury/ Malpractice*

310 Airplane
315 Airplane Product Liability
320 Assault, Libel & Slander
330 Federal Employers Liability
340 Marine
345 Marine Product Liability
350 Motor Vehicle
355 Motor Vehicle Product Liability
360 Other Personal Injury
362 Medical Malpractice
365 Product Liability
368 Asbestos Product Liability

### C. *Administrative Agency Review*

151 Medicare Act

**Social Security:**
861 HIA ((1395ff)
862 Black Lung (923)
863 DIWC/DIWW (405(g)
864 SSID Title XVI
865 RSI (405(g)
**Other Statutes**
891 Agricultural Acts
892 Economic Stabilization Act
893 Environmental Matters
894 Energy Allocation Act
890 Other Statutory Actions (If Administrative Agency is Involved)

### D. *Temporary Restraining Order/Preliminary Injunction*

**Any nature of suit from any category may be selected for this category of case assignment.**

**\*(If Antitrust, then A governs)\***

### E. *General Civil (Other)*        OR        F. *Pro Se General Civil*

**Real Property**
210  Land Condemnation
220  Foreclosure
230  Rent, Lease & Ejectment
240  Torts to Land
245  Tort Product Liability
290  All Other Real Property

**Personal Property**
370  Other Fraud
371  Truth in Lending
380  Other Personal Property Damage
385  Property Damage Product Liability

**Bankruptcy**
422 Appeal 28 USC 158
423 Withdrawal 28 USC 157

**Prisoner Petitions**
535  Death Penalty
540  Mandamus & Other
550  Civil Rights
555  Prison Condition

**Property Rights**
820  Copyrights
830  Patent
840  Trademark

**Federal Tax Suits**
870  Taxes (US plaintiff or defendant
871  IRS-Third Party 26 USC  7609

**Forfeiture/Penalty**
610  Agriculture
620  Other Food &Drug
625  Drug Related Seizure of Property 21 USC 881
630  Liquor Laws
640  RR & Truck
650  Airline Regs
660  Occupational Safety/Health
690  Other

**Other Statutes**
400  State Reapportionment
430  Banks & Banking
450  Commerce/ICC Rates/etc.
460  Deportation

470  Racketeer Influenced & Corrupt Organizations
480  Consumer Credit
490  Cable/Satellite TV
810  Selective Service
850  Securities/Commodities/ Exchange
875  Customer Challenge 12 USC 3410
900  Appeal of fee determination under equal access to Justice
950  Constitutionality of State Statutes
890  Other Statutory Actions (if not administrative agency review or Privacy Act

| **G.** *Habeas Corpus/ 2255* | **H.** *Employment Discrimination* | **I.** *FOIA/PRIVACY ACT* | **J.** *Student Loan* |
|---|---|---|---|
| **530 Habeas Corpus-General**<br>**510 Motion/Vacate Sentence** | **442 Civil Rights-Employment**<br>**(criteria: race, gender/sex,**<br>**national origin,**<br>**discrimination, disability**<br>**age, religion, retaliation)**<br><br>**\*(If pro se, select this deck)\*** | **895 Freedom of Information Act**<br>**890 Other Statutory Actions**<br>**(if Privacy Act)**<br><br><br><br>**\*(If pro se, select this deck)\*** | **152 Recovery of Defaulted**<br>**Student Loans**<br>**(excluding veterans)** |

| **K.** *Labor/ERISA (non-employment)* | **L.** *Other Civil Rights (non-employment)* | **M.** *Contract* | **N.** *Three-Judge Court* |
|---|---|---|---|
| **710 Fair Labor Standards Act**<br>**720 Labor/Mgmt. Relations**<br>**730 Labor/Mgmt. Reporting &**<br>**Disclosure Act**<br>**740 Labor Railway Act**<br>**790 Other Labor Litigation**<br>**791 Empl. Ret. Inc. Security Act** | **441 Voting (if not Voting Rights**<br>**Act)**<br>**443 Housing/Accommodations**<br>**444 Welfare**<br>**440 Other Civil Rights**<br>**445 American w/Disabilities-**<br>**Employment**<br>**446 Americans w/Disabilities-**<br>**Other** | **110 Insurance**<br>**120 Marine**<br>**130 Miller Act**<br>**140 Negotiable Instrument**<br>**150 Recovery of Overpayment &**<br>**Enforcement of Judgment**<br>**153 Recovery of Overpayment of**<br>**Veteran's Benefits**<br>**160 Stockholder's Suits**<br>**190 Other Contracts**<br>**195 Contract Product Liability**<br>**196 Franchise** | **441 Civil Rights-Voting**<br>**(if Voting Rights Act)** |

---

**V. ORIGIN**

| 1 Original<br>Proceeding | 2 Removed<br>from State<br>Court | 3 Remanded from<br>Appellate Court | 4 Reinstated<br>or Reopened | 5 Transferred from<br>another district<br>(specify) | 6 Multi district<br>Litigation | 7 Appeal to<br>District Judge<br>from Mag. Judge |
|---|---|---|---|---|---|---|

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

---

**VII. REQUESTED IN COMPLAINT** — CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23    **DEMAND $**    Check YES only if demanded in complaint

**JURY DEMAND:**    **YES**    **NO**

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    **YES**    **NO**    If yes, please complete related case form.

**DATE**    **SIGNATURE OF ATTORNEY OF RECORD**

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section **II**.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.